O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA J. GEIGER,<br><br>           Plaintiff,<br>   v.<br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>           Defendant. | Case No. CV 08-967-OP<br><br>MEMORANDUM OPINION AND ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 5, 7.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

## I.
## **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered the medical opinion evidence; and

(2) Whether the ALJ properly considered Plaintiff's credibility.

(JS at 7.)

## II.
## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## **DISCUSSION**

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of disorder of the

lumbar spine and disorder of the cervical spine. (Administrative Record ("AR") at 1108.) The ALJ found Plaintiff had the RFC to perform a range of light work with the following limitations: sit eight hours in an eight-hour day; stand/walk six hours in an eight-hour day; be allowed to change positions briefly one to three minutes every hour; lift twenty pounds occasionally and ten pounds frequently; occasionally use the right lower extremity for pushing or pulling or operating foot controls; occasionally climb stairs, bend, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolding; never work at unprotected heights or around dangerous or fast moving machinery, drive automotive equipment, or work around open pools of water; occasionally use both upper extremities above shoulder level; occasionally move her head and neck to full range of motion and frequently move her head and neck to fifty percent of full range of motion; and never perform jobs requiring hypervigilence, never be in charge of safety operations of others, and never perform high production, quota, or rapid assembly work. (Id. at 1112.)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was not capable of performing her past relevant work as a sales representative but could perform alternative work as officer helper, mail clerk, and arcade attendant. (Id. at 1120-22.)

**B.     The ALJ's Consideration of the Medical Opinions.**

Plaintiff argues that the ALJ erred by failing to provide sufficient reasons for rejecting the medical opinion evidence. It appears Plaintiff specifically challenges the ALJ's rejection of the opinions of Richard Gluckman, M.D., John Dymond, M.D., Stuart Green, M.D., and Dennis Malkasian, M.D. (JS at 8-13, 15-16.)

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir.2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  The ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33; SSR 96-2p.  Similarly, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990)).  Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it.  Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

### 1. Dr. Dymond.

On August 18, 1994, Dr. Dymond examined Plaintiff in relation to her breast implant litigation claim.  (AR at 198-201, 433-36.)  According to Dr. Dymond's report, Plaintiff exhibited thinning hair with some bald patches, inflamed conjunctiva, and positive Tinel's sign.  (Id. at 200.)  Dr. Dymond also noted Plaintiff's subjective complaints of fatigue, photophobia, headache, and cognitive dysfunction.  (Id. at 201.)  Dr. Dymond concluded as follows with respect to Plaintiff's disability as it possibly related to her breast implants:

> Cynthia Geiger fits best into Category of atypical connective tissue disease/atypical rheumatic syndrome/atypical autoimmune condition.

> . . . .
>
> I believe Ms. Cynthia Geiger fits best into compensation subcategory, she has one sign from Group A in the form of positive Schirmer's test, one sign from Group B in the form of a positive Tinel's and seven symptoms and signs from Group C in the form of fatigue, dysesthesias of the arms and legs, photophobia, headache, severe cognitive dysfunction, hair loss and breast deformity. Because of the severity of her symptoms, she can only consistently do a few activities of homemaking and self care and essentially none of leisure or recreational activities.

(Id. at 201.)

The ALJ rejected Dr. Dymond's opinions, as well as those of William P. Klein, M.D., as follows:

> Dr. Dymond examined the claimant in August 1994 and Dr. Klein in September 1994. Both provided diagnosis resulting from silicone breast implants and appear to have been prepared during the period the claimant was seeking compensation for alleged disability related to silicone implants. Indeed, the record is without complaints of related symptomatology thereafter. Furthermore, as stated above, scientific studies have shown no connection with autoimmune disease. Accordingly, the undersigned gives little weight to the assessments of Dr. Dymond and Dr. Klein and finds no severe impairment related to silicone breast implants.

(Id. at 1109 (citations omitted).)

The ALJ's reasons for rejecting Dr. Dymond's opinions are not legally sufficient. First, the ALJ's conclusion that there were no complaints of symptoms related to Dr. Dymond's opinions after August 1994 is incorrect. Plaintiff complained of symptoms related to Dr. Dymond's opinions both before and after

Dr. Dymond's August 1994 report. (Id. at 226-32, 278-79, 290-96, 300-02, 310, 321, 642-43.) Accordingly, this is not a legitimate reason for rejecting Dr. Dymond's opinions.

Neither was the ALJ's citation to the lack of correlation between silicone implants and autoimmune disease a legitimate reason for rejecting Dr. Dymond's opinions. The ALJ appears to rely on a statement by rheumatologist Mark Jason, M.D., in a September 19, 2002, report stating that as far as he knows, "there is no silicone-related autoimmune disease by all the scientific studies." (Id. at 530.) The fact that a single doctor stated in 2002 that he was unaware of a link between silicone and autoimmune disease does not automatically render unreliable Dr. Dymond's findings some eight years before that Plaintiff was suffering from an autoimmune dysfunction that he believed, under the science known at that time, to be related to her silicone breast implants. This is particularly true where the breast implant litigation at issue had specified a specific compensation category related to connective tissue/autoimmune disease.

Accordingly, remand is required for the ALJ to set forth legally sufficient reasons for rejecting the opinions of Dr. Dymond, if the ALJ again determines rejection is warranted.[3]

**2.   Dr. Gluckman.**

On August 10, 1994, Dr. Gluckman also examined Plaintiff in relation to her breast implant litigation claim. (Id. at 408-13.) At that time, Plaintiff exhibited muscle tenderness, spidery lesions on her chest, cervical tenderness, cervical lymph nodes, positive straight leg raises, decreased ankle reflexes, glove-and-stocking neuropathy, positive Tinel's sign, and borderline tremor with hands extended. (Id. at 410-11.) Dr. Gluckman concluded as follows with respect to Plaintiff's disability as it possibly related to her breast implants:

---

[3] The Court expresses no view on the merits.

> The patient does not appear to fit into one of the four neurologically specific syndromes. However, she does have enough criteria to fit into a nonspecific autoimmune condition. She does have an equivocal appearing MRI at this time, entertaining demyelination as one possibility. However, the lesions are not periventricular and this appears to be a "rule out" rather than a diagnosis. She does have significant cognitive difficulties, memory problems, neuropathy symptomatology including dysesthesia, signs of entrapment with positive Tinel's sign, tingling paresthesia, burning pain in the extremities, loss of ankle reflex, and loss of sensation to pinprick, touch, and cold. She has equivocal serologic testing for cardiolipin antibodies. She has arthralgia, myalgia, chronic fatigue, night sweats, photosensitivity, sicca symptomatology, burning pains in the chest and breast [unintelligible].
>
> She is a 47-year-old, right handed female first implanted in 1971 and who has not been explanted at the present time. Local symptoms occurred immediately at the age of 24. Other symptomatolgy began over the next ten year period, from age 24 to 34. Significant neurological symptomatology appeared to begin at the age of 34. Intermittent symptomatology occurred in the intervening years. The patient appears to be 35% disabled at this time.

(Id. at 412-13.)

The ALJ rejected Dr. Gluckman's opinions, as follows:

> The undersigned gives little weight to this unclear conclusion of disability as the determination of disability is reserved to the Commission. Furthermore, as discussed above, Dr. Gluckman appears to have seen the claimant on a limited basis for the purpose of establishing "disability" resulting from silicone breast implants.

1 (Id. at 1116 (citation omitted).)

2   First, the purpose for which Dr. Gluckman examined Plaintiff is not an appropriate basis for rejecting his opinions. Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (holding that the ALJ erred in rejecting a physician's reports because they "were clearly obtained by the claimant's attorney for the purpose of litigation," and stating that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them"). To the extent the ALJ intended to highlight the fact that Dr. Gluckman might have had a limited treating relationship with Plaintiff, the ALJ's reasoning is equally insufficient. Even if Dr. Gluckman was nothing more than an examining physician, the ALJ was still required to provide specific and legitimate reasons supported by substantial evidence for rejecting the physician's opinion. Id. at 830-31.

  In addition, while the ALJ properly rejected Dr. Gluckman's ultimate disability conclusion as being a determination reserved to the Commissioner, Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005), the ALJ did not offer any other reasons for rejecting Dr. Gluckman's objective findings with respect to Plaintiff's illness and impairment.

  Accordingly, remand is required for the ALJ to set forth legally sufficient reasons for rejecting the opinions of Dr. Gluckman, if the ALJ again determines rejection is warranted.[4]

  **3.** **Drs. Green and Malkasian.**

  To the extent Plaintiff also argues that the ALJ erred in rejecting the opinions of Dr. Green, her claim fails. The ALJ acknowledged Dr. Green's findings and conclusions, and found them to be consistent with the ALJ's opinion. (AR at 1116.) Accordingly, the ALJ was not required to offer reasons to support the rejection of Dr. Green's findings.

---

[4] The Court expresses no view on the merits.

1   With respect to Dr. Malkasian, the ALJ did not specifically accept or reject
2   his findings. It is possible the ALJ believed that Dr. Malkasian's findings were
3   consistent with her opinion and, thus, she had no duty to provide reasons for
4   rejecting the doctor's findings. However, because the Court has found that this
5   action must be remanded for reconsideration of the opinions of Drs. Dymond and
6   Gluckman, the ALJ should more clearly articulate her findings with respect to the
7   opinions of Dr. Malkasian.

**C.    The ALJ's Consideration of Plaintiff's Credibility.**

Plaintiff also contends the ALJ failed to provide sufficient reasons for rejecting her credibility with respect to her subjective complaints of a disabling condition. (JS at 16-21, 23-25.)

The ALJ rejected Plaintiff's credibility, as follows:

> Despite the claimant's allegations of an inability to work due to pain and fatigue, the records reflect ongoing use of Vicodin since years prior to her alleged onset date with no apparent increase in dosage or usage. The claimant has also made inconsistent statements that diminish the credibility of her allegations. She reported taking one to three Vicodin a day in March 1994, but testified that in a week she has more often used four to six Vicodin a day (Testimony, 10/06/09). Further, while the claimant was unable to state whether the severity of her pain and/or other symptoms had changed since she was hit by a car in March 1999 (Testimony, 10/06/09), in 2002 the claimant told her treating rheumatologist that she was worse since her 1999 accident. The claimant's significant disc bulge in the lumbar spine appeared to resolve itself with no evidence of radiculopathy or other significant neurological findings other than some diminished sensation in the right foot, which has been addressed by the limitation of occasional use of the right lower extremity for operation of foot controls. Indeed, even when the

9

claimant's lumbar disc extrusion was significant, based on the lack of neurological abnormalities, her examining physician Dr. Malkasian questioned whether her 10mm disc extrusion had resolved. Although the disc extrusion was still prominent at the time of Dr. Malkasian's examination later MRIs indicate significant improvement.

The claimant has not required hospitalizations, emergency room treatment, use of a TENS unit, participation in a pain management program, or other extensive or significant form of treatment commonly prescribed for severe pain. The claimant has exhibited no gait abnormalities and has not required the use of assistive devices. Despite the claimant's allegations of debilitating and ongoing pain spanning a period of several years, she has not exhibited any diffuse atrophy or muscle wasting, common indicators of chronic pain due to nonuse of muscles. The claimant's date last insured was over a decade ago and her recollections of pain may be colored by other factors since that time, such as her March 1999 accident when she was hit by a car and sustained multiple injuries. In sum, the above residual functional capacity assessment is supported by the objective evidence; greater limitations are simply not warranted.

(AR at 1120 (citations omitted).)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

10

Once a claimant has presented medical evidence of an underlying impairment which could reasonably be expected to cause the symptoms alleged, the ALJ may only discredit the claimant's testimony regarding subjective pain by providing specific, clear, and convincing reasons for doing so. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991). An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities. See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted). An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact

that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication).

  The ALJ provided three reasons for rejecting Plaintiff's credibility: she provided inconsistent statements, she received conservative treatment, and her complaints were not supported by the objective medical evidence. As explained below, these reasons were not clear and convincing.

  First, the alleged inconsistencies in Plaintiff's statements cited by the ALJ are unconvincing. To the extent the ALJ deems Plaintiff's statements regarding her use of Vicodin and the severity of her symptoms following her 1999 accident inconsistent, the ALJ has mischaracterized Plaintiff's testimony. As of March 16, 1994, Plaintiff reported taking one to three Vicodin per day. (AR at 223.) More than fifteen years later, during her testimony before the ALJ on October 6, 2009, Plaintiff explained that during the years between 1993 and 1998 she took anywhere between "one or two" Vicodin per day and "four or five or six" Vicodin per day. (Id. at 1467, 1472.) Plaintiff's later testimony was essentially consistent with her March 1994 statement, particularly when the Court considers the broader time frame of her later testimony and the fact that it was provided so many years after her initial statement. Moreover, the ALJ faults Plaintiff for being "unable to state whether the severity of her pain and/or other symptoms had changed since she was hit by a car in March 1999 (Testimony, 10/06/09)" while "in 2002 the claimant told her treating rheumatologist that she was worse since her 1999 accident." (Id. at 1120.) However, a review of the 2009 hearing transcript reveals that Plaintiff was not specifically asked whether the severity of her symptoms had changed since her accident, although she was asked about her injuries from the accident and whether she required surgery. (Id. at 1464, 1472.)

  Next, the ALJ concluded that Plaintiff was not credible based on a finding that she received conservative treatment for her back condition and never required

1  hospitalizations, emergency room visits, a TENS unit, or a pain management
2  program. However, Plaintiff's treating physician Dr. Malkasian noted more than
3  once that surgery had been discussed as a treatment option, but that Plaintiff was
4  hesitant to proceed with such extreme treatment. (Id. at 222, 232.)

5        Finally, the ALJ rejected Plaintiff's subjective complaints of impairment
6  because they were not supported by the objective medical evidence. However,
7  this factor, by itself, is not sufficient to support the ALJ's decision to reject
8  Plaintiff's credibility. Bunnell, 947 F.2d at 345 (9th Cir. 1991) ("[O]nce the
9  claimant produces objective medical evidence of an underlying impairment, [the
10 ALJ] may not reject a claimant's subjective complaints based solely on a lack of
11 objective medical evidence to fully corroborate the alleged severity of pain.");
12 SSR 96-7P ("An individual's statements about the intensity and persistence of
13 pain or other symptoms or about the effect the symptoms have on his or her ability
14 to work may not be disregarded solely because they are not substantiated by
15 objective medical evidence.").

16       Because the ALJ failed to provide clear and convincing reasons for rejecting
17 Plaintiff's credibility, this action must be remanded to allow the ALJ to properly
18 consider Plaintiff's subjective complaints of impairment and provide legally
19 sufficient reasons for rejecting Plaintiff's credibility, if the ALJ again determines
20 rejection is warranted.[5]
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 _____
28     [5] The Court expresses no view on the merits.

## IV.
## **ORDER**

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: June 19, 2014

HONORABLE OSWALD PARADA
United States Magistrate Judge